NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

Jerome DUFFY,

    Plaintiff,

v.

Jennifer VELEZ, Commissioner, New Jersey Department of Human Services; John R. Guhl, Director, New Jersey Department of Human Services; and Heather Howard, Commissioner of New Jersey Department of Health and Senior Services,

    Defendants.

Civ. No. 09-5539

OPINION & ORDER

---

THOMPSON, U.S.D.J.

INTRODUCTION

This matter comes before the Court upon Defendants' Motion to Dismiss [docket # 9]. The Court has considered the motion upon the written submissions of the parties, without oral argument. For the reasons given below, the motion is DENIED.

BACKGROUND

For purposes of this motion, the following allegations—which are laid out in the Complaint—are accepted as true.

Plaintiff is a disabled individual who has been granted benefits under New Jersey's medical assistance program, which is part of Medicaid, a program jointly operated by both the state and federal governments that provides medical care to financially needy people. The benefits available under the medical assistance program vary depending on the recipient's

1

income level.  Individuals with up to $2022 in monthly income are eligible for benefits at the "categorically needy" level, while individuals whose income is higher than $2022 may be eligible for benefits at the "medically needy" level.  One of the programs available at the "categorically needy" level is the "Global Options for Long-Term Care" ("Global Options"). The Global Options program provides home-based and community-based nursing services to recipients, allowing them to get services at home that would otherwise require them to move into a hospital or nursing institution.

In November 2007, Plaintiff moved into Buttonwood Hospital in Burlington County.  About the same time, he was placed on a waiting list for a bed at Brandywine Estates Assisted Living Facility ("Brandywine").  Since March 2008, he has received Medicaid benefits at the "medically needy" level.  In January 2009, Brandywine contacted Plaintiff's son to inform him that they would accept Plaintiff under the Global Options program, and two and a half weeks later, Plaintiff moved into Brandywine.  About six months later, on July 7, 2009, Burlington County Board of Social Services ("BCBOSS") sent Plaintiff's son stating that Plaintiff's monthly income of $2032.22 was in excess of the categorically needy income cap of $2022 by $10 per month.  The Complaint does not state how it is that Plaintiff was originally deemed eligible for the Global Options program if his income was over the categorically needy level.  After he was determined ineligible for Global Options, Plaintiff was transferred to the Royal Suites Nursing and Rehabilitation Center in Galloway, New Jersey.  Plaintiff's son requested that the state make an exception for his father, but BCBOSS formally denied that request on August 14, 2009.

Plaintiff filed this action on October 29, 2009.  He argues that Defendants' decision not to make an exception to the income cap constitutes a failure to make a reasonable

accommodation for a disabled individual, in violation of the Americans With Disabilities Act ("ADA"). Defendants filed this motion in lieu of an answer on January 6, 2010.

## ANALYSIS

I.  Standard of Review

To survive a motion to dismiss, a plaintiff must plead sufficient factual matter to enable a court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). As the Third Circuit has noted, this requires the Court to undertake a two-step analysis:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1949-50). At step one, the Court sets aside any legal conclusions and "recitals of elements of a cause of action." *Iqbal*, 129 S.Ct. at 1949. At step two, the Court accepts the remaining allegations as true and assesses whether or not they support a reasonable inference that the defendant is liable. *Id.* Rather than alleging facts that are "'merely consistent with' a defendant's liability," the Complaint must allege facts that, if true, "give rise to an entitlement to relief." *Id.* at 1949-50 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). In other words, an inference of liability is not reasonable if the factual allegations are more likely explained by lawful behavior than unlawful behavior. *Id.* at 1950. In performing this analysis, a judge may not, of course, assess the plausibility of the facts themselves. The Court must accept well-pleaded facts as true (*Id.*), even if "actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

II. Plaintiff's ADA Claim

The ADA prohibits public entities from excluding a disabled individual from any services, programs, or activities by reason of his or her disability. 42 U.S.C. § 12132. Regulations promulgated under the ADA implement the statute by requiring public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities," a requirement that has come to be known as the "integration mandate." 28 C.F.R. § 35.130(d). An "integrated setting" is a setting that "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." 28 C.F.R. pt. 35 app. A. This mandate requires public entities to make "reasonable modifications" to existing practices if necessary in order to avoid discriminating against disabled persons unless "the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

The Third Circuit has synthesized these laws into a three-part test for finding a violation of the integration mandate. In order to succeed, a plaintiff must show (1) the State's treatment professionals have determined that community placement is appropriate, (2) the individual does not oppose transfer to the community setting, and (3) the placement can be reasonably accommodated, taking into account both the resources available to the State and the needs of others with disabilities. *Penn. Protection and Advocacy, Inc. v. Dep't of Public Welfare*, 402 F.3d 374, 379 (3d Cir. 2005) (quoting *Olmstead v. Zimring*, 527 U.S. 581, 587 (1999)). The third prong of this test operates on a burden-shifting paradigm; once the plaintiff articulates a reasonable accommodation, the burden shifts to the State to show that the requested relief would "fundamentally alter" the nature of the program. *Frederick L. v. Dep't of Public Welfare*, 364 F.3d 487, 492 n.4 (3d Cir. 2004).

The first two prongs of this test are not currently at issue. As the allegations above demonstrate, the State determined that community placement was appropriate for Plaintiff, and Plaintiff did not object to that transfer. In assessing the third prong—whether a community placement can be reasonably accommodated—a Court should consider factors such as "the state's ability to continue meeting the needs of other institutionalized mental health patients for whom community placement is not appropriate, whether the state has a waiting list for community placements, and whether the state has developed a comprehensive plan to move eligible patients into community care settings." *Penn. Protection*, 402 F.3d at 380 (quoting *Frederick L.*, 364 at 495). While the state's spending decisions are "clearly relevant" to this determination (*id.*), courts may not rest their decisions solely on budgetary factors. On the one hand, defendants cannot establish that a proposed modification is unreasonable merely by showing that the modification would cost more money. *See id.* at 380-81. Conversely, plaintiffs cannot establish that a proposed modification *is* reasonable simply by comparing the cost of the proposed modification with the cost of the program as is. *Frederick L.*, 364 F.3d at 497. Nor may a plaintiff attack budgeting decisions, whether made at the legislative or the departmental level. *Id.* More important than budget-related issues is the question of whether or not the State has demonstrated that it has made a commitment to integration. The state can only maintain a fundamental alteration defense if it shows that it has "developed and implemented a plan" that complies with the integration mandate. *Penn. Protection*, 402 F.3d at 381. This is not a particularly onerous burden. The state merely must show that, under its plan, "there will be ongoing progress toward community placement." *Frederick L.*, 364 F.3d at 500. However, the State cannot rest on past performance in making this showing. *Id.*

The only element currently at issue is whether or not Plaintiff has alleged a reasonable accommodation. As stated above, Plaintiff's initial burden is only to "articulate[] a reasonable accommodation;" the burden then shifts to the State to show a fundamental alteration. *Id.* at 492 n.4. Therefore, to show that he has a plausible claim for relief, Plaintiff need only allege facts showing that an accommodation could be made which would allow Plaintiff to obtain the medical care to which he is entitled in a less restrictive setting. Toward that end, the Complaint states that Plaintiff's son requested that BCBOSS make an exception to the categorically needy income cap so that Plaintiff could enjoy living in a community-based setting. Such an exception qualifies as an accommodation. Plaintiff need not allege further facts concerning whether this modification would qualify as a "fundamental alteration" because it is the state's burden to make that showing. Since Plaintiff has alleged facts which suggest he could prove all the elements of his case, this Court concludes that his claim is plausible.

## CONCLUSION

For the foregoing reasons, it is ORDERED, this 5th day of February, 2010, that Defendants' Motion to Dismiss [9] is DENIED.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.